

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 28, 2022

**BY ECF**
The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States v. Rowson*, **22 Cr. 310 (PAE)**

    The Government respectfully submits this letter in opposition to the defendant's renewed motion for pretrial release. On April 6, 2022, the Honorable Katherine P. Failla, United States District Judge, denied the defendant's bail application, finding primarily that he presented a risk of flight that could not be mitigated by any combination of release conditions. (April 6, 2022 Bail Hr'g ("Tr.") (attached hereto as Exhibit A) at 42-43.) Raising primarily arguments that have already been rejected by Judge Failla, the defendant has filed the instant renewed motion for pretrial release. For the reasons set forth below, this Court should find, as Judge Failla has already done, that there are no set of conditions that can ensure the defendant's appearance in future court dates as directed or the safety of the community.

    **Factual Background**

    On or about March 5, 2022, in the evening at around 9:45 p.m., New York City Police Department ("NYPD") officers patrolling in a vehicle in the Bronx pulled up next to an Uber taxi and observed the defendant, Iszayah Rowson, sitting in the backseat without a seatbelt, in violation of New York State traffic laws. Accordingly, NYPD officers conducted a traffic stop of the Uber taxi. An officer approached Rowson in the backseat, knocked on the window, asked for Rowson's identification, told him that he was not wearing a seatbelt, and that the law was changed. During this interaction, which was recorded by the officer's bodyworn camera, the officer observed that Rowson appeared to be nervous and was breathing heavily, and saw a bulge inside the front of Rowson's pants that was consistent with a firearm. The officer then asked Rowson to step out of the vehicle. During a pat-down of Rowson, the officers felt a hard object in the front of Rowson's pants, which felt consistent with the barrel of a firearm. The officer then reached into Rowson's pants and recovered a loaded firearm. According to law enforcement reports, the firearm recovered from Rowson was reported stolen in Virginia on or about February 9, 2022.

When Rowson was in possession of the loaded firearm on or about March 5, 2022, he was already under indictment in Bronx County for criminal possession of a weapon in the second degree and criminal possession of a firearm on or about April 8, 2021, both crimes punishable by imprisonment for a term exceeding one year. A grand jury in the Bronx returned the indictment in August 2021 and Rowson was arraigned on those charges on or about October 4, 2021.

In addition to possessing firearms on these two occasions—April 8, 2021 and March 5, 2022—the defendant, according to his own Instagram accounts, was also in possession of at least three separate firearms, including a firearm with an extended magazine, and what appears to be an assault weapon with a drum magazine, from July 2020 through January 2021.

On or about March 21, 2022, the Honorable James L. Cott, United States Magistrate Judge of the Southern District of New York, authorized a criminal complaint and an arrest warrant for the defendant for receipt and transportation of a firearm while under indictment, following his arrest for his unlawful possession of a loaded firearm on March 5, 2022. Three days later, on or about March 24, 2022, NYPD officers attempted to arrest the defendant and visited both the defendant's mother's address as well as his girlfriend's address. NYPD officers informed the defendant's mother and his girlfriend that they were looking for the defendant on the basis of an arrest warrant.

Then, on April 1, 2022, when the defendant was required to appear in the Bronx Supreme Court at 9:30 a.m. for a conference in his pending Bronx case, United States Marshals arrived at the courthouse to attempt to arrest the defendant there. The defendant's state defense counsel then called and spoke to the defendant to make sure that he appeared at the courthouse. Shortly after that conversation, the Deputy Marshals who were tracking the defendant's phone, who had seen the defendant's phone traveling to the courthouse, saw that the defendant's cellphone then suddenly turned off. Indeed, defense counsel told the Assistant District Attorney who was present in Court that she was trying to but failing to reach the defendant. The defendant never did appear for his state court proceeding. The defense counsel then requested that the appearance be rescheduled for the following Monday.

Some time later on April 1, 2022, the defendant's phone was turned back on, and Deputy Marshals who were tracking the defendant's phone saw that the phone was in New York. Despite the defendant's phone still being in New York, the defendant posted to his Instagram account two posts that appeared to show that he had traveled to Atlanta, Georgia.

On April 4, 2022, Deputy Marshals tracked the defendant's phone to an apartment in Manhattan. Deputy Marshals knocked on the door and announced that they were there with an arrest. The defendant nonetheless refused to open the door. Finally, the Marshals were required to break down the door to the apartment, and they arrested the defendant.

The defendant was presented the next day, on April 5, 2022, before the Honorable Jennifer Willis, United States Magistrate Judge of the Southern District of New York. Over the Government's objections on both dangerousness and flight risk grounds, Judge Willis granted pretrial release subject to certain conditions, including home incarceration as enforced by electronic monitoring. The Government appealed that decision, and appeared before the

Honorable Katherine Failla, United States District Judge of the Southern District of New York on April 6, 2022. Judge Failla, after hearing argument from both parties, ordered the defendant detained on the basis that the defendant presents a danger to the community and that he poses a flight risk.

On July 25, 2022, defense counsel filed the instant motion for pretrial release pursuant to 18 U.S.C. § 3142(c).

### Legal Standard

Under the Bail Reform Act, a defendant must be detained pending trial if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Government bears the burden of proof as to risk of flight by a preponderance of the evidence, and as to danger to the community by clear and convincing evidence. 18 U.S.C. § 3142(f); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007).

A party seeking reconsideration of a prior bail determination faces a high burden. "Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources. A motion for reconsideration may not be used to advance . . . facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." *Jackson v. Goord*, 664 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (internal quotations omitted). Pursuant to 18 U.S.C. § 3142(f), a detention hearing "[m]ay be reopened . . . if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." "A court may properly reject an attempt to reopen a detention hearing where the new information presented is immaterial to the issue of flight risk or danger to the community." *United States v. Petrov*, No. 15-CR-66-LTS, 2015 WL 11022886, at *2 (S.D.N.Y. Mar. 26, 2015), *aff'd*, 604 F. App'x 66 (2d Cir. 2015).

### Discussion

First, the defendant cannot meet the high standard for reconsideration of Judge Failla's detention order. The defendant has not presented any new information, not already known to him at the time of the hearing in April, that is material to the issues of flight risk or danger to the community. Instead, the defendant has presented arguments related to his family ties, his limited criminal history, the circumstances of the offense, and COVID restrictions at the Metropolitan Detention Complex ("MDC"), all of which were known at the time of the initial bail hearing, to argue that he does not pose a significant flight risk or danger to the community. In addition, the defendant rehashes the argument that has been already rejected by Judge Failla that he did not appear at his Bronx state court appearance on April 1, 2022, because he had been instructed by his attorney that the case was adjourned to the following Monday, April 4, 2022. Finally, the defense argues that some of the social media posts depicting the defendant holding firearms from July 2020 to January 2021, relied upon by the Government to argue that the defendant presents a danger to

the community, were posted from Georgia, where such conduct would not be illegal. As discussed in more detail below, this argument is neither material to the question of the defendant's dangerousness nor does the metadata purport to show that the defendant was legally carrying these weapons at the time those photos were taken.

Accordingly, the Court should reject the defendant's attempt to reopen the bail hearing for failure to furnish any new information that is material to the Court's consideration.

Second, in light of the defendant's checkered history complying with court orders in the past, the defendant presents a significant flight risk if he were to be released. The defendant went through significant lengths to avoid arrest in this very case. The defendant was made aware of the Government's arrest warrant for him as early as March 24, 2022, when NYPD officers visited and spoke to the defendant's mother and girlfriend in attempts to locate him. Yet instead of self-surrendering and facing the charges in court, the defendant attempted to evade arrest again on April 1, 2022. As Judge Failla concluded, the natural inference based on the sequence of events recounted above is that the defendant was made aware that federal law enforcement officers were seeking to arrest him when he was scheduled to appear at the Bronx courthouse for his pending case there, and, because of that, he decided to not appear at this scheduled court appearance in order to evade arrest.[1] In fact, instead of appearing in court as ordered, he decided to turn off his phone, post misleading images on Instagram pretending that he had fled to Atlanta, Georgia, and decided to stay with another relative in Manhattan, rather than the residence that he normally kept with his mother. Furthermore, even as law enforcement officers showed up at his door to arrest him, he continued to attempt to obstruct those efforts, and refused to open the door, requiring law enforcement officers to go to the extraordinary length of having to take down the door in order to make the arrest.

Nor was this the first time that the defendant has attempted to evade arrest. The defendant successfully fled on foot from NYPD officers on April 8, 2021 after they observed the defendant dropping a firearm to the ground, and he evaded arrest for almost two months until he was finally arrested on June 1, 2021. This history demonstrates that the defendant has the willingness to evade law enforcement officers in order to avoid facing charges, including ignoring a court order to appear, and that he has the ability to do so, at least for some period of time, even while remaining in the New York City and close to his family.

Third, the defendant presents a clear danger to the safety of the community. The dangerousness of the defendant's actions here is clear. Contrary to the defendant's argument, he did not just idly carry a firearm. The defendant obtained a stolen firearm after he had already been arrested for the unlawful possession of a firearm, while he is still facing charges stemming from

---

[1] Judge Failla has already soundly rejected the defendant's argument that the defendant did not appear in Bronx court on April 1 because he was informed by his attorney that the appearance was rescheduled to April 4, which he puts forward again in the instant renewed motion for pretrial release. The court appearance was only rescheduled to April 4 because the defendant failed to appear, as ordered, at 9:30 a.m. on April 1, and his defense attorney was unable to reach him after initially calling him, in front of the Deputy Marshals, telling him to come to Court.

that possession, and so he could not have had a doubt in his mind regarding the legality of his actions, so that he could bring a loaded concealed firearm to some place.

As the Second Circuit has found, "[p]ossession of a gun greatly increases one's ability to inflict harm on others and therefore involves some risk of violence." *United States* v. *Dillard*, 214 F.3d 88, 93 (2d Cir. 2000). And this risk of violence is heightened here where the defendant has posted numerous images to his Instagram account acknowledging his membership in the Crips, a well-established nationwide gang, and in a neighborhood gang called ThirdSide or 3rdSide. *See, e.g.,* Exhibits B-D. In addition to these posts, the defendant has also posted videos of himself rapping regarding shooting at the "opposition." *See, e.g.,* Exhibit E. The fact that the defendant was *in fact* in unlawful possession of firearms, time and again, suggests that these videos are not merely puffery or the defendant taking artistic license. In any event, the defendant is publicizing his gang membership, his possession of firearms, and his intent to shoot at opposition groups, and, whether or not *he* intended those threats to be real, the people looking at his posts may find his threats real and decide to take action that may require the defendant to use the very real firearms that he appears to have no trouble accessing.

The defendant's argument that the danger the defendant poses to the community is somehow diminished because the metadata to some of the photos depicting the defendant holding serious firearms, including an assault weapon with a drum magazine,[2] show that those photos were posted in Georgia is meritless. First, the metadata from Instagram reflects simply the location where the phone was when the photos were posted to Instagram. The metadata does not reflect where the defendant was when the photos were taken. Second, it is still unlawful for a person to possess a firearm in Georgia without a license. There is no evidence here that the defendant possesses a firearms license in Georgia. Finally, that the defendant was also potentially in possession of firearms in Georgia does not make him less dangerous to the community for the reasons set forth above. The fact remains: the defendant, in defiance of a prior arrest and while on notice that his possession of a firearm is unlawful, nonetheless decided to obtain a stolen firearm and travel with it, while loaded, hidden in his pants.

Finally, the Court should reject the defendant's general and speculative argument that he must be released to assist in his own defense in light of potential restrictions stemming from the COVID-19 pandemic. The defendant has not pointed to any current restrictions that are preventing him from effectively communicating with his attorney. As the Court may be aware, in-person attorney visits have resumed at the MDC, where the defendant is currently detained. Additionally, as always, legal calls are also available to the defendant to communicate with his attorney. Accordingly, the defendant has simply failed to allege any particular issue or concern with respect to the conditions of the MDC that would outweigh the serious danger and flight risk that he poses.

---

[2] A drum magazine is a type of high-capacity magazine designed to allow the shooter to fire multiple rounds without reloading. While the capacity of a drum magazine can vary, each typically contains between 50 and 100 rounds.

**Conclusion**

In conclusion, for the forgoing reasons, the Court should deny the defendant's renewed motion for bail.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Ni Qian/Elizabeth Espinosa/Jim Ligtenberg
Assistant United States Attorneys
(212) 637-2364